602 So.2d 194 (1992)
STATE of Louisiana, Plaintiff-Appellee,
v.
Shirley DECUIRE, Defendant-Appellant.
No. CR91-1271.
Court of Appeal of Louisiana, Third Circuit.
June 24, 1992.
Linda Veazey, Ronald Melebeck, Abbeville, for defendant-appellant.
Marc T. Amy, Asst. Dist. Atty., Abbeville, for plaintiff-appellee.
Before GUIDRY, YELVERTON, and COREIL[*], JJ.
YELVERTON, Judge.
Shirley Decuire, the defendant, was tried by a jury and found guilty on February 6, 1991, of possession of marijuana with intent to distribute, a violation of La.R.S. 40:966, and possession of cocaine with intent to distribute, a violation of La.R.S. 40:967. She was sentenced to five years at hard labor with three years suspended. *195 She has appealed urging seven assignments of error.
When Mrs. Decuire appeared for sentencing, and the sentencing judge began questioning her, he discovered that she was severely hearing impaired. He continued the sentencing to another day, and ordered Loomis, the probation officer, to have her tested. Dr. Henry Trahan, an audiologist with the ACI Hearing Center, examined Mrs. Decuire and filed a report of the testing. This letter was read into the record by the trial judge at the later sentencing. This is what the report stated:
Dear Mr. Loomis:
As per your request, I re-examined Ms. Decuir on 6-4-91. I am not sure if you are aware of this but I had previously examined her on 3-22-90.
The results of today's examination remain essentially unchanged from last year. Standard pure tone air and bone conduction threshold audiometry show the presence of a bilaterally symmetrical moderate to severe sensorineural hearing loss. Speech discrimination is very poor even at the most comfortable loudness levels.
These results indicate that Ms. Decuir has a significant auditory impairment and unless an individual would be facing her she would have a great deal of problems understanding what is being said even if the speaker were talking in a very loud voice. I can foresee that this would create significant problems if Ms. Decuir was given an order and was not able to see the person issuing the order. Her lack of response may be misconstrued and this could create some significant difficulties.
Her communicative problem is significant. Her speech patterns indicate that her hearing loss has been present for a number of years as her speech is characterized with numerous distortion, [sic] omissions and misarticulations that are common in a long standing hearing loss.
Mrs. Decuire was tried and convicted in February of 1991, between Dr. Trahan's first and second examinations.
At the second sentencing hearing, her half brother testified that she was 44 years old and had had the hearing disability all her life. There was a discussion of Mrs. Decuire's hearing impairment and its possible effect upon her sentences of imprisonment. The sentencing judge was concerned how Mrs. Decuire was going to hear the proceedings at sentencing. Even counsel for Mrs. Decuire implied that Mrs. Decuire had not heard any of the proceedings at trial.
THE COURT.... How is Ms. Decuir going to hear me during this proceeding?
MS. VEAZEY. How has she heard anything throughout(Interrupted)
THE COURT. Well, I don't know, counsel, that'sand I still wouldn't know if I had not noticed it myself in open court. It's a concern of mine. Ms. Decuir, I want youcan you hear me?
(NO RESPONSE FROM MS. DECUIR).
THE COURT. Come here. If you stand right here, can you hear me. If you stand right here, can you hear me, can you read my lips?
MS. DECUIR. Yes.
Although at the second sentencing hearing all parties discussed Mrs. Decuire's hearing problem and its effect on her sentences of imprisonment, its effect on her trial was not given any consideration. We note from the record that no pretrial motions were ever filed raising her hearing impairments as a matter to be dealt with. There is no indication in the record that she was afforded an interpreter as mandated by La.R.S. 15:270 for deaf or severely hearing impaired criminal defendants. She did not testify at the trial so her disability could not have become known by that means. No post-trial motions raised the problem. Although a motion for a new trial was filed, and denied, the motion did not mention her hearing impairment. It is conceivable that nobody knew about it until the sentencing hearing. The judge did not. It is not included in any assignment of error on this appeal.
Since Mrs. Decuire's incapacity to proceed with trial was not the subject of any pretrial motion, nor is it designated as *196 an assignment of error on appeal, the only way in which we can consider this issue is by the exercise of our supervisory jurisdiction under Art. V, Sec. 10, La. Const. 1974.
The record before us casts grave doubts on the ability of Mrs. Decuire not only to understand the proceedings at trial, but also to communicate and to assist her attorney in defending her. On the other hand, the record of the sentencing does not conclusively resolve the question of whether Mrs. Decuire actually did or did not understand the proceedings at her trial or whether she was or was not able to assist in her defense.
Mrs. Decuire was entitled to a fair trial. Art. I, Sec. 16, La. Const. 1974. A person who, because of a physical condition, defect or disability, clearly lacks the capacity to consult with counsel, and to assist in preparing and conducting his defense, may not be subjected to trial. State v. Smith, 471 So.2d 954 (La.App. 2d Cir. 1985). The interest of justice in this case clearly requires that a hearing be conducted to determine whether, at the time of her trial, Mrs. Decuire was capable of consulting with her counsel and preparing and conducting her defense.
Exercising our supervisory jurisdiction, we remand for such a hearing and determination. If the trial court determines that she lacked such capacity, the state's options are to retry Ms. Decuire with an interpreter as required by La.R.S. 15:270, or release her.
If the trial court determines that she had the capacity to stand trial, the matter will be returned to us for consideration of her appeal.
REMANDED.
NOTES
[*] Honorable Joseph E. Coreil, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.