THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GREGORY WILLIAMS, Defendant-Appellant.

First District (1st Division)   No. 1—01—1010

Opinion filed June 10, 2002.

Rita A. Fry, Public Defender, of Chicago (Pamela Pfrang, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Alan J. Spellberg, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNULTY delivered the opinion of the court:

Following a bench trial the court found defendant, Gregory Williams, guilty of possessing more than one gram of cocaine, with intent to deliver, within 1,000 feet of a public park. The trial court learned during the trial that defendant suffered from a hearing impairment, but the court made no inquiry about the extent of the impairment, and the court made no effort to ensure that defendant heard the testimony against him. We reverse the conviction and remand for a new trial because the court violated defendant's constitutional rights to due process and to confront the witnesses against him.

Police arrested defendant on November 15, 1999. The defense made no pretrial motions and the defense did not formally enter any plea until the day of trial, April 6, 2000. Defendant then pled guilty and waived the right to a jury trial.

The prosecution presented the arresting officer as its only witness. The defense stipulated to the testimony of other witnesses. The prosecution rested and the defense called defendant to testify. Once the court swore him in, before any questioning began, defendant testified:

"[T]hey took my hearing aid from me because they had batteries and I wasn't allowed to hear [the prosecution's case]."

The court instructed defense counsel to question defendant in a loud voice, but the court made no inquiries about what defendant may have heard or missed of the prosecution's case. The court also made no effort to learn the extent of defendant's hearing difficulty. The court found defendant guilty as charged.

The presentence investigation disclosed that, due to a gunshot wound, defendant needed hearing aids for both ears. At the sentencing hearing the court asked defendant whether he wished to say anything. Counsel, on the record, repeated the invitation to defendant. The following colloquy ensued:

"THE COURT: Can you hear?

[Defense counsel]: He has a hard time hearing.

THE DEFENDANT: I'm deaf in one ear.

THE COURT: Did you hear what *** the State's Attorney[ ] said about you?

THE DEFENDANT: *** I heard some parts of it.

* * *

THE COURT: All right. Talk as loud as you want to."

Again, the court made no inquiry as to the extent of defendant's ability to hear or what arguments he may not have heard. The court did not even ask whether defendant had his hearing aids. The court listened patiently to defendant and sentenced him to nine years in prison. Defense counsel moved for a new trial but raised no issue concerning defendant's ability to hear the prosecution's case at trial.

■ On appeal defendant contends that the court's failure to ensure that he could hear the evidence against him deprived him of due process and the right to confrontation. The prosecution points out that defense counsel waived the issue by failing to object at trial and by failing to raise the issue in the posttrial motion. Due to the fundamental nature of the rights involved and the need for consistent precedent in this area, we choose to address the issue despite counsel's waiver. See *People v. Bolden*, 197 Ill. 2d 166, 178, 756 N.E.2d 812 (2001).

■ The Illinois Constitution of 1970 establishes that all persons accused of crimes have the right to defend themselves in person and by counsel and the right to meet witnesses against them. Ill. Const. 1970, art. I, § 8. The courts must afford each defendant due process before depriving him of liberty. Ill. Const. 1970, art. I, § 2. The constitution requires the provision of reasonable facilities to permit a handicapped defendant to exercise his confrontation and due process rights. *People v. Branson*, 131 Ill. App. 3d 280, 286-87, 475 N.E.2d 905 (1984).

Courts of other states have explained why similar provisions of those states' constitutions and the United States Constitution require special accommodations for the hearing impaired. A Louisiana court held:

> "[T]he Constitution requires that a defendant sufficiently understand the proceedings against him to be able to assist in his own defense. Clearly, a defendant who has a severe hearing impairment, without an interpreter, cannot understand the testimony of witnesses against him so as to be able to assist in his own defense." *State v. Barber*, 617 So. 2d 974, 976 (La. App. 1993).

A court in New York observed:

> " 'For a deaf defendant... a... trial without some form of interpretive language assistance is reduced to an unintelligible and empty ritual. In an uninterpreted trial, a deaf defendant's right to be heard in his own defense is significantly impaired, *i.e.*, identification by the deaf defendant of factual misstatements is highly improbable and the opportunity for effective confrontation is correspondingly diminished. Furthermore, participation in defensive strategy through communication with counsel during the trial phase is critically impaired.' " *People v. Rivera*, 125 Misc. 2d 516, ___, 480 N.Y.S.2d 426, 432 (N.Y. Sup. Ct. 1984), quoting G. Relyea, Note, *Procedural Due Process: A Deaf Defendant's Right to Be*

*Heard Should Encompass A Right to "Hear" Civil Trials Through Interpretation*, 29 Cath. U. L. Rev. 867, 867-68 (1980).

And a court in Alabama long ago said:

> "[T]he accused must not only be confronted by the witnesses against him, but he must be accorded all necessary means to know and understand the testimony given by said witnesses ***. *** The constitutional right *** would be meaningless and a vain and useless provision unless the testimony of the witnesses against him could be understood by the accused. Mere confrontation of the witnesses would be useless, bordering upon the farcical, if the accused could not hear or understand their testimony." (Emphasis omitted.) *Terry v. State*, 21 Ala. App. 100, 101, 105 So. 386, 387 (1925).

We agree. The Illinois Constitution similarly protects the rights of hearing-impaired defendants to reasonable accommodations sufficient to ensure the defendant's full participation in his defense.

The court in *People v. Doe*, 158 Misc. 2d 863, ___, 602 N.Y.S.2d 507, 509-10 (N.Y. Crim. Ct. 1993), recognized the similarities between the situation of a hearing-impaired defendant and a defendant unable to understand English:

> "Clearly, a non-English speaking defendant could not meaningfully assist in his/her own defense without the aid of an interpreter. A hearing impaired person is similarly deprived of due process in court proceedings conducted without assistance. *** The fact that [the defendant] is able to hear a list of words given her in a controlled test setting, does not mean she has the ability to hear testimony given in a narrative style at a trial. Even assuming that she was able to hear 92% of the trial, that percentage is not enough to satisfy due process. A defendant is entitled to hear 100% of the proceedings."

See also *State v. Schaim*, 65 Ohio St. 3d 51, 65, 600 N.E.2d 661, 672 (1992); *People v. James*, 937 P.2d 781, 783 (Colo. App. 1996); *Commonwealth v. Wallace*, 433 Pa. Super. 518, 532, 641 A.2d 321, 325 (1994). The Arizona Supreme Court also recognized the similarity:

> "A defendant's inability to spontaneously understand testimony being given would undoubtedly limit his attorney's effectiveness, especially on cross-examination. It would be as though a defendant were forced to observe the proceedings from a soundproof booth or seated out of hearing at the rear of the courtroom, being able to observe but not comprehend the criminal processes whereby the state had put his freedom in jeopardy. Such a trial comes close to being an invective against an insensible object, possibly infringing upon the accused's basic 'right to be present in the courtroom at every stage of his trial.' [Citation.]" *State v. Natividad*, 111 Ariz. 191, 194, 526 P.2d 730, 733 (1974).

For the defendant unable to hear testimony, watching the proceedings must seem even more like observing from a soundproof booth.

Our constitution requires the assistance of an interpreter for any criminal defendant unable to speak or understand English. *People v. Escalante*, 256 Ill. App. 3d 239, 246, 627 N.E.2d 1222 (1994). Other courts have clarified the procedures necessary to protect the due process rights of defendants unable to speak English fluently. In *Cadet v. State*, 809 So. 2d 43, 45 (Fla. App. 2002), quoting *Tehrani v. State*, 764 So. 2d 895, 898 (Fla. App. 2000), the court succinctly observed:

> " 'Once the trial court is aware that an accused has difficulty with the English language, the court should determine whether a defendant understands English sufficiently to aid in his defense, much as the court has a duty to determine whether a defendant is mentally competent.' "

In *Hernandez v. State*, 862 S.W.2d 193, 197 (Tex. Ct. App. 1993), the court held that the trial court committed reversible error by proceeding to trial without an interpreter, after the defendant requested an interpreter, when the trial court had not determined the defendant's ability to understand English. And in *United States v. Mayans*, 17 F.3d 1174 (9th Cir. 1994), the trial court forced the defendant to proceed without an interpreter. The court held that the United States Constitution required the court to observe the defendant's language skills before deciding whether to grant his request for an interpreter. *Mayans*, 17 F.3d at 1181.

The Wisconsin Supreme Court stated the standard for the prior determination of linguistic competence:

> "[D]ue regard for the right of a criminal defendant who does not understand English to the services of an interpreter requires that whenever a trial court is put on notice that the accused has a language difficulty, the court must make a factual determination of whether the language disability is sufficient to prevent the defendant from communicating with his attorney or reasonably understanding the English testimony at the preliminary hearing or trial."

*State v. Neave*, 117 Wis. 2d 359, 375, 344 N.W.2d 181, 188-89 (1984). The court emphasized that a minimal hearing may suffice, as long as the court has a sufficient basis in the record for determining the defendant's ability to proceed. Although *Neave* was later overruled in part on other grounds (see *State v. Koch*, 175 Wis. 2d 684, 710, 499 N.W.2d 152, 158 (1993)), the courts have since reaffirmed that the trial court has the duty to inquire into the need for an interpreter whenever the court has reason to doubt the defendant's ability to speak and understand English. *State v. Yang*, 201 Wis. 2d 721, 725, 549 N.W.2d 769, 772 (App. 1996).

At least one court has applied principles like those stated in *Neave* and *Cadet* to a hearing-impaired defendant. In *Schaim*, 65 Ohio St. 3d at 64-65, 600 N.E.2d at 672, the court held:

"The confrontation clause requires that a defendant be given the opportunity to be physically present at trial, that the defendant be competent to assist in his own defense, and that the defendant understand the language of the forum. [Citation.] A defendant who cannot hear is analogous to a defendant who cannot understand English, and a severely hearing-impaired defendant cannot be tried without adopting reasonable measures to accommodate his or her disability. [Citations.]

The Sixth Amendment requires a trial court to grant an evidentiary hearing when a defendant makes a credible claim that he or she is seriously hearing-impaired. Once a court grants an evidentiary hearing to determine the degree of the defendant's disability, it is within the trial court's discretion to decide whether the defendant requires assistance to understand the proceedings and the best means to accomplish that goal."

■ Our supreme court has also held that the manner of protecting the defendant's rights must depend upon the circumstances of the case, and therefore the trial court has discretion to determine the proper accommodations. *People ex rel. Myers v. Briggs*, 46 Ill. 2d 281, 287, 263 N.E.2d 109 (1970). But to exercise that discretion the court must first make some meaningful inquiry into the nature and extent of the defendant's hearing impairment. Like the courts in *Schaim*, *Neave*, and *Cadet*, we hold that once the trial court learns that a defendant in a criminal trial suffers from a hearing impairment, the court must inquire into the nature and extent of the impairment, so that the court can determine the accommodations reasonably necessary to protect the defendant's right to confront the witnesses against him and participate in his defense.

■ When defendant here testified that he did not hear the prosecution's witness because his hearing aid had been taken away, he unequivocally gave the court notice of his hearing impairment. The court then had a duty to inquire into the nature and extent of the impairment. The court made no inquiry, and the court made no provision to protect the defendant's right to hear the witnesses against him. The trial violated defendant's due process and confrontation rights.

Defendant argues that we should not remand for a new trial on the charge of possessing more than one gram of cocaine with intent to deliver, because the prosecution failed to prove his intent to deliver the cocaine and that the quantity of cocaine exceeded one gram.

Defense counsel stipulated to the chain of custody, and he stipu-

lated that a chemist would testify that the sealed envelope she received with the appropriate label for this case contained eight items. The chemist would testify that "those eight items weighing 1.4 grams did test positive for *** cocaine." We find the stipulation sufficient to meet the prosecution's burden of proving possession of more than one gram of cocaine. See *People v. Williams*, 200 Ill. App. 3d 503, 516, 558 N.E.2d 261 (1990).

The arresting officer testified that he watched four separate transactions in which defendant took something from persons who walked up to him. Each time defendant then removed an object from a bag and handed it to the person who gave him money. Because the officer identified the bag as the one whose contents he sent to the chemist, who found the items in the bag contained cocaine, the prosecution presented adequate evidence to support an inference of intent to deliver cocaine. See *People v. Jackson*, 318 Ill. App. 3d 321, 325-26, 741 N.E.2d 1026 (2000).

The evidence at trial sufficiently supports the conviction for possession of more than one gram of cocaine with intent to deliver within 1,000 feet of a public park. We reverse the conviction and remand for a new trial, for which the trial court must take adequate measures to assure that defendant can hear the testimony and other evidence against him despite his hearing impairment.

Reversed and remanded.

COHEN, P.J., and COUSINS, J., concur.